EMERY C. DAVIS *vs.* JOHN N. HUMPHREY & others.

At the trial upon a petition to enforce a mechanic's lien under Gen. Sts. *c.* 150, there was evidence that A. (the petitioner) contracted with B. to do work and furnish materials in building a house upon land of C. of which B. had a bond for a deed ; that the bond was given by C., knowing that B. intended, and for the purpose of enabling him, to build ; that B. and C. had frequent conversations about building upon the land both before and after the bond was given ; that C. knew that B. was endeavoring to procure money for that purpose ; that he knew he had dug his cellar ; that C. met A. at the house when A. first began to work ; that he talked with A.'s foreman about the lot ; that A., shortly after he began the work, gave him oral notice of his intention to claim a lien ; and there was conflicting evidence as to C.'s reply to this notice. *Held*, that there was sufficient evidence to be submitted to the jury that the work was done and the materials furnished with the consent of C.

An owner of land, who has given a bond for a deed upon the understanding that the obligee will build upon the land, and who, after a mechanic has begun to build thereon under an entire contract with the obligee, gives his consent that the mechanic may build, thereby subjects the land to a lien for all the work done and materials furnished and used by the mechanic under the contract, although a part of the work has been done and a part of the materials furnished before he gives his consent, and although he is ignorant of the precise terms of the contract.

PETITION to enforce a mechanic's lien for labor performed and for materials furnished and used in the erection of a house. The respondent Humphrey was defaulted. Edwin B. Goodwin and James Converse, the other respondents, defended the action.

Trial in the Superior Court, before *Brigham*, C. J. It was agreed that Humphrey made a contract with the petitioner, about the middle of September, 1871, for the erection of a house, on land of which Humphrey then held a bond from Goodwin for a deed ; that Goodwin then held the title to the land, and held it from that time to December 12, 1871, when he conveyed it to Converse. The petitioner testified that Humphrey told him that he had a deed of the land and would give him a mortgage on it as security. This Humphrey denied. The petitioner was to do the wood work and furnish materials for the same, the work to be done by the day. He testified that $200 was to be paid November 1, 1871, $100 or $150 December 1, 1871, and the balance in monthly instalments of from $10 to $20 each, secured by a mortgage on the premises. Humphrey testified that $200 was to be paid on the completion of the contract, and that he promised

to pay $100 in December, if it was convenient for him to do so, and that the balance was to be paid in monthly instalments of from $10 to $20 per month, but no mortgage was to be given. $200 was paid December 12, 1871, and before the completion of the house, but the $100 was not paid, and no mortgage was ever given.

The work was completed and the materials had been furnished by about December 19, 1871. January 5, 1872, the petitioner filed in the town clerk's office the statement required by Gen. Sts. *c.* 150, § 5. It was agreed that a written notice that he intended to claim a lien upon the land and building for labor and materials furnished was given by the petitioner to Goodwin November 18, 1871. The petitioner also testified that he gave Goodwin oral notice that he should claim a lien for materials to be furnished, as early as the first week in November, 1871. Goodwin, in his testimony, denied such notice, and testified that the oral notice was given before he received the written notice, and on the same day, and that he replied that he should in no way be responsible.

Humphrey testified that he took a bond for a deed in May, 1871 ; that he commenced his cellar in the same month ; but that he was disappointed in money and did not complete the contract for building his house till fall ; that his arrangement with Goodwin was to have a lot and build a house upon it ; but that Goodwin did not know when he was building. Goodwin testified that before and after the giving bond he and Humphrey talked about building on the lot, and getting money for it ; that they frequently had conversations afterwards ; that he understood from Humphrey that he expected funds from some person, but did not get them ; that some time in the fall, Humphrey told him that he had made arrangements with another person to have money and to go on and build the house ; that he did not know the details of this arrangement till the giving of the deed to Converse, December 12, 1871 ; that he knew that the cellar was put in in the spring of 1871 ; but that he knew very little about the erection of the house which was put up until it was nearly completed, and that he did not know that the petitioner was employed in

its erection or employed to furnish materials until a day or two before the written notice. The petitioner testified that he had given Goodwin the oral notice, as above mentioned, and that he had met Goodwin on the new street in front of the house, in the latter part of September, during the first of his working on the house. One Smith, who was Davis's foreman, testified that Goodwin knew he was working on the house, and spoke to him about the lot. It was also in evidence that Goodwin owned other lots in the immediate vicinity, and that he lived within half a mile of the premises. The foreman Smith testified that he commenced work on the house the 30th of October; that there had been three or four days' work done then, and that the last work was done December 19, 1871. Humphrey paid $200 December 12, and the latter part of January, 1872, offered Davis $20, as the instalment for that month, but it was refused, Davis saying that he had commenced proceedings to enforce a lien. When Humphrey paid the $200, Davis gave a written acknowledgment of its receipt upon account.

It was also in evidence that the house in question was a brick building; that the petitioner did, and furnished materials for, the wood work only; that Converse had advanced all the money that had been paid on the premises, to the amount of $700; that Humphrey was now occupying the premises as a tenant under Converse, and that he was a man of no property.

The presiding judge submitted to the jury questions, which, with the answers given, were as follows:

1. When did Davis notify Goodwin that he, Davis, intended to claim a lien for materials on the land? *Ans.* On or before the 10th of November, 1871.

2. Did Humphrey agree to pay $100 or $150, on the completion of the house, absolutely or conditionally? *Ans.* Conditionally.

3. Did Humphrey agree to give Davis a mortgage to secure the payment of the balance due on the completion of the house? *Ans.* Yes.

4. Did Goodwin know, when he gave to Humphrey his bond to convey the land, that Humphrey intended thereupon to build

a house on that land, and consent before November 18 that Davis should there build? *Ans.* Yes.

The defendants asked the court to instruct the jury as follows: That the fact that Goodwin saw a cellar made on the land, several months before the making of the contract under which the work in question was done and the materials were furnished, and the fact that he understood from Humphrey that he intended to build on the land and that he expected money from a certain source for that purpose, which expectation was not realized, were not sufficient evidence from which a jury could infer that Goodwin consented to the contract between the petitioner and Humphrey, or consented to the doing of the work and the furnishing of materials by the petitioner; that especially this would be so if it appeared affirmatively that Goodwin had no actual knowledge of the contract, work done and materials furnished, until about the time he had the notice of November 18, and if, when that notice was given, he denied his liability, or refused to be responsible; and that there was not in law sufficient evidence that the contract between the petitioner and Humphrey was made or that the work was done and materials furnished on the land with the consent of Goodwin.

But the presiding judge declined to give these instructions, and instructed the jury as follows: That if Goodwin knew that the petitioner was building the house for Humphrey, and made no objection to such building, his consent to it might be inferred, notwithstanding Goodwin did not know the arrangement under which the building was going on.

In commenting on the evidence of Davis, the defendants' counsel, in his argument to the jury, contended that his testimony as to the issue submitted was not entitled to credit because he was uncertain as to some of the items, and because, as the defendants contended, he had intentionally misplaced dates, and given the date of December 7, which he did not claim was correct, at the same time testifying that he had memoranda, which he did not produce, by which he could have made the times of the delivery of the materials certain; and after the findings of the jury on the issues, the defendants' counsel claimed that on the testimony of

Davis the times of his furnishing materials were left in doubt. The petitioner's counsel contended that the $200 paid should first be applied to extinguish the claim prior to the notice. The presiding judge ruled that upon the facts agreed and the facts found by the jury the petitioner was entitled to recover; that the jury were warranted upon the evidence in the findings of facts found by them, and ordered a verdict for $440.23, namely, the amount claimed first reduced by the payment of $200, and then reduced by the sum of $178.54, the amount charged in the petitioner's bill for work done and materials furnished before November 18, with interest, against the objection of the respondents.

The presiding justice reported the case to this court for the determination of the questions of law arising upon the facts agreed, the facts found by the jury, and the evidence upon which the jury found these facts, the order of the court as to the application of the payments made by the respondents, and the rulings of the court in the case.

*S. T. Spaulding,* for the respondents.

*H. H. Bond,* (*D. W. Bond* with him,) for the petitioner.

ENDICOTT, J. The petitioner in September, 1871, made a contract with Humphrey to do the wood work, and furnish the necessary material therefor, upon a brick house, in process of erection on land the legal title to which was in Goodwin. Work was commenced under this contract some time before October 30. Humphrey at that time held a bond for a deed of the land from Goodwin, and under our decisions no lien would attach to the land under such contract, unless the building was erected or the work done with the consent of Goodwin. *Hayes* v. *Fessenden,* 106 Mass. 228.

This question was submitted to the jury, and they found that when Goodwin gave the bond for a deed he knew Humphrey intended to build, and that before November 18 he consented Davis should so build; and also that on or before November 10 Davis notified Goodwin that he intended to claim a lien on the land for his work and materials.

The only question raised by the respondents on this point is, that there was no sufficient evidence to go to the jury, that the work and materials were furnished with the consent of Goodwin.

We think there was evidence on this point proper for the jury. It appears in the report that the intent of Goodwin and Humphrey, when Goodwin gave the bond, was that Humphrey should have a lot and build a house on it; that they had frequent conversations about building before and after the bond was given; that Goodwin knew Humphrey's arrangements for procuring money for that purpose, and also knew when the cellar was dug; that he met Davis at the house when he first began to work, and talked with his foreman about the lot; and that during the first week in November, Davis gave him oral notice that he intended to claim a lien, and whether Goodwin then declared he would be in no way responsible, was a question in dispute. All three parties were witnesses. These facts had some tendency to show consent on the part of Goodwin, and their weight was for the jury to determine.

The case is to be distinguished from the decisions of *Peabody* v. *Eastern Society*, 5 Allen, 540, and *Hayes* v. *Fessenden, supra.* Both these cases arose on agreed statements of facts. It was held in the first there was no evidence the owner knew of the erection of the building on his land, much less that he consented; in the second, that mere knowledge of the erection was not sufficient, there being no evidence of consent. The case resembles more closely *Hilton* v. *Merrill*, 106 Mass. 528, where it was held to be within the contemplation of the parties, and the principal purpose of the agreement to convey, that a house should be built upon the land, and the consent to build was to be implied from the contract. And here the consent may be implied from the knowledge of the party taken in connection with his acts, purposes and conduct as they appeared in the evidence, upon which the instructions were given. And this was in substance the ruling of the presiding judge; and he was not bound to instruct the jury that upon particular facts, separated from the others, they would not be justified in finding consent; but properly submitted the question upon all the evidence.

The ruling of the presiding judge, ordering a verdict for $440 was too favorable to the defendants. It proceeded upon the ground that no lien attached for materials furnished before No-

vember 18. The jury found that Davis notified Goodwin, on or before November 10, that he intended to claim a lien, and that Goodwin consented before November 18 that he should build on the land. Davis was then building under an entire contract with Humphrey to furnish labor and materials in the erection of the house. There is no question that Goodwin knew that Davis was building for Humphrey under some agreement with him; whether he knew the precise terms of the agreement is not important. Under these circumstances his consent that Davis should build must be taken to be a consent that he should build for Humphrey as agreed upon; or in other words, to do all which his contract with Humphrey required. Such consent covers the work performed under such contract, and must be held to include that which had been done when the consent was given, as well as that which was afterwards done in completion of the contract. The question raised as to the application of payments therefore becomes immaterial.

Whether the agreement to take a mortgage for the balance due, when the house was finished, was inconsistent with the existence of a lien, was not raised or ruled upon in the court below.

*Judgment on the verdict.*