### ENOCH R. QUIMBY *vs.* SARAH J. DURGIN.

Essex. November 9, 1888. — November 28, 1888.

Present: MORTON, C. J., FIELD, DEVENS, C. ALLEN, & KNOWLTON, JJ.

*Mechanic's Lien — Promissory Note — Payment.*

A builder erected two houses, under an entire contract with the owner, upon a large lot of land upon which he had just built for him four similar houses as well as a stable " to be used by such of the tenants of the several houses as chose to pay a certain rent therefor and not to be used in connection with any house or houses exclusively." Such owner had never indicated orally, by a plan or by anything done on the land, a purpose to divide the parcel into smaller lots.

*Held,* that the builder could maintain a petition to enforce a mechanic's lien, under the Pub. Sts. c. 191, upon the entire lot.

The builder made the contract with the landowner's agent, and, at a time when he had a lien and a claim against the landowner for all that was then due him, obtained the agent's note for a special purpose other than payment, which was made known to the agent. The builder did not give the landowner credit for it in his books, nor include it in a written statement of credits subsequently rendered, and the agent after his failure several times told the builder that the landowner would pay it. *Held,* that the judge presiding at the trial of the petition was not bound to rule, as matter of law, that the note was received as payment.

PETITION, under the Pub. Sts. c. 191, to enforce a mechanic's lien for labor performed and materials furnished in the construction of two houses on a lot of land in Haverhill owned by the respondent. Trial in the Superior Court, without a jury, before *Lathrop,* J., who found for the petitioner, and reported the case for the determination of this court, in substance as follows.

The lot of land in question was situated at the corner of Main Street and Brickett Street, and was rectangular in shape, being about three hundred and thirty feet long and two hundred and nine feet wide. In March, 1886, one Coffin, the respondent's son and her agent for the transaction of all business, made on her behalf an oral contract with the petitioner to erect four houses for her on the lot, three on Main Street and one on Brickett Street. In July, 1886, when these four houses were substantially completed, the petitioner made another oral contract with the respondent, through Coffin, to build two more houses on the lot on Brickett Street. All of the six houses were of the same general character, differing only in minor points. No partition fences were erected between the houses dividing the land into separate lots assigned to each house, nor were any bounds established for that purpose, nor were any marks or other means in use to designate any particular portion of land as attached or belonging to either house rather than to any other, unless the relative situation of the houses themselves was such, they being about equally distant from each other, and together occupying all the available frontage on both streets. While the houses were being built, a stable was also built, under a separate contract with the petitioner and the respondent, acting through Coffin, on the rear portion of the lot, nearly equidistant from the houses, to be used by such

tenants only of the several houses as chose to pay a certain rent therefor, and not to be used in connection with any house or houses exclusively. A plan of the land used at the trial disclosed only the boundary lines of the entire lot, with the relative position of the buildings upon it, but did not show any lines dividing the lot into smaller lots. During the progress of the work, Coffin made various payments on general account to the petitioner, who, without objection, used them in extinguishing the amount due under the contracts for the erection of the first four houses and of the stable, leaving a small balance towards the payment of the amount due under the second contract for the erection of the two houses. Upon these facts the judge refused to rule, as requested by the respondent, that the petition could not be maintained upon the whole tract of land for the amount remaining due under the second contract.

On October 13, 1886, the petitioner was indebted to the firm of Hoyt and Taylor, and, upon their requesting payment on account, asked Coffin, at their suggestion, to give a note payable to Hoyt and Taylor for $500; and Coffin on that day gave the petitioner his note for that amount, payable, however, to the order of the petitioner, who indorsed and delivered it to that firm. The petitioner never gave the respondent credit on his books for the amount of this note, and in a written statement of credits subsequently rendered did not include it, but gave a receipt for the amount of it to Coffin personally " on house account." Before the note became due, Coffin failed, owing a large sum of money, and subsequently was adjudged an insolvent debtor. Coffin after his failure several times told the petitioner that the respondent would pay the note. Hoyt and Taylor, in consideration of the payment to them of one hundred and fifty dollars by one who had purchased all the assets of Coffin, released him, reserving their rights against the petitioner. The petitioner was also adjudged an insolvent debtor, and Hoyt and Taylor proved the note as a claim against the petitioner's estate, and the note remains on file in the Court of Insolvency as a claim against the estate of the petitioner. At the time the note was made, the petitioner had a lien and a claim against the respondent for all that was then due him. The judge refused to rule, as matter of law, as requested by the respondent, that the note should be

allowed as payment on account of the amount due to the petitioner, and found, as matter of fact, that the note was not payment, and did not allow it as such.

If the ruling respecting the note was wrong, the damages were to be decreased accordingly, and the petition, if it could not upon the above facts be maintained, was to be dismissed; otherwise, the finding was to be affirmed.

*W. H. Moody*, for the respondent.

*I. A. Abbott*, for the petitioner.

KNOWLTON, J.    The principal question in this case is, what was included in the "lot of land," upon which the petitioner had a lien under the Pub. Sts. c. 191, § 1.    The debt for which he seeks to enforce his lien is the balance due upon a contract for the erection of two houses for the respondent.    These houses were built upon a lot about three hundred and thirty feet long and two hundred and nine feet wide, upon which four other similar houses and a stable had been erected by the petitioner for the respondent a short time before.    That the petitioner had a lien upon these two houses and the lot of land upon which they are situated is not disputed.    But the respondent contends that the lot includes only the land covered by the two houses, or at most a small additional portion very near them, which, from its location, might be expected to be used by their occupants.

We see no good ground for this contention.    Nothing has ever been done on the land, or on paper, or even by spoken words, to indicate a purpose on the part of the owner to divide the large lot into smaller ones.    The stable was erected " to be used by such of the tenants of the several houses as chose to pay a certain rent therefor, and not to be used in connection with any house or houses exclusively."    That indicates an intention to keep the whole land as a single lot, and to let to tenants certain parts of it, with rights in common in other parts.    Undoubtedly, the lot is capable of division; but where the owner will choose to run his lines of division, if he ever divides it, is only a matter of conjecture.    The petitioner's right to a lien upon every part of the lot is not affected by the fact that there are buildings not included in his contract which are a part of the real estate. *Wall* v. *Robinson*, 115 Mass. 429.    *Batchelder* v. *Rand*, 117 Mass. 176.    There is nothing in the case of *Landers* v. *Dexter*, 106

Mass. 531, inconsistent with this view. The facts of that case are not fully reported; but upon reference to the original papers on file, it appears that the land described had been divided into as many lots as there were houses before the houses were built, and the contracts under which the respondent obtained the land treated it as made up of twenty different lots. The ruling upon this branch of the case was correct.

Whether or not the note made by Coffin, the respondent's son and agent, and given to the petitioner, was received as a payment, was a question of fact to be decided upon the evidence. In this Commonwealth, the giving of a negotiable promissory note is sufficient evidence of payment of a pre-existing debt, where there is nothing to rebut the inference ordinarily drawn from it. And this is true, whether the note is made by the debtor or by a third person. *Ely* v. *James*, 123 Mass. 36. But in the case at bar, there was evidence proper for the consideration of the court upon that subject. It appeared that the note was obtained for a special purpose other than payment of the petitioner, which was made known to the respondent's agent, and that the petitioner did not give the respondent credit for it on his books, nor include it in a written statement of credits subsequently rendered. After the failure of Coffin, he several times told the petitioner that the respondent would pay it. The fact that, at the time the note was given, the petitioner had a lien and a claim against the respondent for all that was then due him, was a circumstance bearing upon the question whether he accepted the note as a payment. We cannot say that the presiding judge was bound to rule, as matter of law, that the note was received as payment.

*Judgment on the finding.*