ROXBURY PAINTING AND DECORATING COMPANY & others *vs.*
MARIETTA NUTE & others.

Suffolk.    January 8, 1919. — May 22, 1919.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Mechanic's Lien.    Joint Tenants and Tenants in Common.*

In a petition for the establishment of a mechanic's lien under R. L. c. 197, the respondents were two sisters who owned the real estate as tenants in common and one to whom they had agreed in writing to sell it, the agreement providing that possession should be given to the prospective purchaser on delivery of the deed by the owners, the premises then to be in the same condition as when the agreement was signed, "reasonable use and wear of the buildings thereon only excepted." Previous to the making of the agreement the prospective purchaser made a contract with the petitioner for repairing the premises and was permitted by the owners to take possession of the premises so that the petitioner might do his work. Subsequently the purchaser did not carry out his agreement and the real estate never was conveyed to him. *Held*, that the fore-

going facts alone did not warrant a finding that the agreement of the prospective purchaser with the petitioner was made by consent of the owners or of a person rightfully acting for them in procuring or furnishing such labor or materials.

At the trial of issues framed upon the petition above described, there was further evidence warranting findings that one of the tenants in common, knowing that the prospective purchaser could not carry out his agreement to purchase the premises without procuring a loan secured by a mortgage thereon and that such loan would not be procured unless the premises were placed in proper repair, agreed orally with the prospective purchaser that the agreement for purchase should be so far modified as to permit the prospective purchaser to take immediate possession of the premises for the purpose of having the repairs in question made and of procuring the mortgage loan and therewith paying the purchase price named in the contract. *Held*, that the question, whether the tenant in common who agreed to such a modification of the contract consented to the making of the contract between the prospective purchaser and the petitioner, was for the jury.

At the same trial, it appeared merely that the tenant in common who agreed with the prospective purchaser to the modification of the agreement had control and management of the real estate for herself and her cotenant, her sister, and that she had told her sister of the progress of the repairs on the premises. *Held*, that a finding was not warranted that the absent tenant in common had consented to the modification of the agreement between the petitioner and the prospective purchaser for the repairs on the premises.

Where, in a petition for the establishment of a mechanic's lien under R. L. c. 197 against two sisters who owned the real estate as tenants in common, it appeared that a contract for labor and materials was made with the petitioner by one who did so with the consent of one of the tenants in common, but there was no evidence warranting a finding that the contract was made with the consent of the other tenant in common, it was *held* that the lien might be established as to the interest of the tenant in common who consented to the making of the contract with the petitioner, and must be dismissed as to the other tenant in common.

PETITION, filed on July 13, 1914, in the Municipal Court of the Dorchester District under R. L. c. 197 by the Roxbury Painting and Decorating Company, a corporation, for the establishment of a mechanic's lien upon property owned by the respondents Marietta Nute and Harriet E. Young as tenants in common. Samuel C. Hathaway, who had agreed in writing to purchase the property and had made contracts with the petitioner for the work and material for which the lien was claimed, also was joined as a respondent. Two other contractors, Joseph A. Duff and Leslie S. Lewis, who made claims under similar circumstances, filed intervening petitions.

On appeal to the Superior Court, issues for a jury were framed and were tried before *Sisk*, J. The material evidence is described

in the opinion. At the close of the evidence and subject to exceptions by the petitioners, the judge ordered answers to the issues, in substance, that the labor performed and furnished as described in the petitions was not performed nor furnished by virtue of an agreement with or by consent of the respondents Nute and Young or of either of them or of a person having authority from or rightfully acting for them. The petitioners alleged exceptions.

*R. J. Lane,* for the petitioners.

*P. Nichols,* for the respondents.

CARROLL, J. · The petitioners seek to establish a lien for labor performed and materials furnished in the repair and alteration of a building on land owned by the respondents Mrs. Young and Miss Nute (hereinafter called the owners), as tenants in common. The work was performed under contracts of the respondent Hathaway with the petitioners. Hathaway made no appearance; his deposition was taken on interrogatories propounded by the petitioners and cross interrogatories of the owners. In the Superior Court a verdict was ordered for the owners.

It was not denied that on March 25, 1914, the owners, by a contract under seal, agreed with Hathaway to sell him the premises for $5,000. Of this amount $250 was paid, and the agreement provided that the deed was to be delivered on or about April 20, 1914. The remainder of the purchase price was to be paid by a note of $2,500 secured by a first mortgage on the premises, payable to Marietta Nute (one of the owners) and by payment in cash of $2,250 on delivery of the deed. It was further provided that possession was to be given to Hathaway on delivery of the deed, the premises to be in the same condition as when the agreement was signed, "reasonable use and wear of the buildings thereon only excepted." Hathaway never paid nor tendered payment of the $2,250 and the agreement was not carried out. The owners retained the $250 paid by Hathaway.

A few days before the execution of the agreement Hathaway contracted with the petitioners for extensive repairs and alterations upon the house, representing that he was the owner. The petitioners entered upon the premises and made the repairs and alterations. April 3, 1914, a second contract was made by Hathaway with the petitioner the Roxbury Painting and Decorating Company to do additional papering and painting, which work was

performed.  Work on the house was discontinued by the petitioner Duff on April 15, 1914, by the petitioner Lewis on April 18, 1914, and by the petitioner the Roxbury Painting and Decorating Company on April 24, 1914.  There was evidence that Miss Nute was on the premises March 28, 1914, when the work was in progress, and when asked if "she wanted to come in" said "'No,' that . . . she would just walk around the house," and again on April 11 she visited the premises and then went through the building and remarked, "How beautiful the house looked and what a great deal of work was put in the house."  Hathaway in his answers to interrogatories, stated that "Miss Nute visited the place while repairs were going on four or five times," and "spoke of the great change he had made in the appearance of the place; she said it looked like a palace;" that "He employed other mechanics to do other work on the house, amounting to about $1,700;" and that "the work of the petitioners was necessary to make the house habitable."

Under R. L. c. 197, § 1, a lien may be established for labor performed and materials furnished in the repair of a building by virtue of an agreement with "or by consent of the owner of such building," or "of a person . . . rightfully acting for such owner in procuring or furnishing such labor or materials."  By the contract of sale dated March 25, 1914, the owners were to convey the premises to Hathaway on or before April 20, 1914; and if this contract was not subsequently modified, then the owners did not agree that Hathaway could charge them with responsibility for his contract and the work was not done with their consent within the meaning of the statute, and he was not rightfully acting for them in procuring or furnishing such labor or material.  Mere notice that he intended to repair the house, and knowledge of the progress of the work and appreciation expressed over the improvements made, were not enough to establish a lien on the owners' estate.  When an owner of land agrees to sell it and allows one who has agreed to buy it to take possession of the property, the owner does not thereby authorize such person to impose a lien on the land, unless by implication the owner authorized the purchaser to contract for the repair and alteration of the building.  As stated in *Hayes* v. *Fessenden*, 106 Mass. 228, at page 230: "Their [the owners] contract for a sale of the land to Fessenden,

notice that he intended to build upon it, and knowledge of the progress of the work, charged them with no responsibility for it to any one." *Saunders* v. *Bennett*, 160 Mass. 48. *Courtemanche* v. *Blackstone Valley Street Railway*, 170 Mass. 50.

The petitioners contend that the contract of sale of March 25, 1914, was not the final agreement between Hathaway and the owners; that the owners knew that Hathaway could not carry out this agreement, and agreed that he should make the repairs and place a mortgage on the property, and pay them the purchase price out of the money secured by the mortgage. To support this contention they offered the evidence of Hathaway, that he talked with Miss Nute before and after March 25, 1914, about the necessity of "raising money required to purchase said estate by placing a mortgage thereon with some bank," and that Miss Nute agreed "to my raising a mortgage on the place, providing they were paid in full," and it was agreed "that I would repair the property in order to raise money to pay them off in full . . . the house . . . was unfit for any one to live in," and we agreed "that I would put it in condition; such would allow my raising funds to pay them off in full;" that he told Miss Nute "about the alterations that were being made, both before the agreement was signed and afterwards. . . . He explained fully to Miss Nute about his repairing the house and putting it in suitable condition to live in, and Miss Nute agreed with him fully as to all his plans, and even with a knowledge that he was going to obtain a mortgage in the bank;" that he also told her "he had taken it up with the Five Cents Savings Bank in Boston and had obtained figures from the Roxbury Decorating Co. in regard to decorating the place;" that he first saw Miss Nute on March 10, 1914, and saw her almost daily for over a month after that date.

William H. Fanning, treasurer of the Roxbury Painting and Decorating Company, testified that about April 11, 1914, he called on Miss Nute and wanted to know if Hathaway had a deed of the property. She told him he did not have a deed, that he had agreed to purchase the property, and paid a substantial amount down, and "was negotiating for a mortgage from the bank in order that he might carry through the deal." He further testified: "I told her we were there doing work, painting, and had a contract with Mr. Hathaway, two contracts, one for the inside and one for the

outside." She said she expected to hear from Hathaway every day, but up to that time he had not called on her; that "he was negotiating with the bank for a mortgage in order that he might live up to the terms of his agreement and carry through the deal on the property and she expected to hear from him most any day;" that "Hathaway would have to put the house in condition . . . in order to get his mortgage from the bank, and he was making the repairs." He also testified that Miss Nute did not tell him to cease work on the building; and that one of his workmen reported to him that a couple of days after this interview Miss Nute was about the premises.

Clarence P. Adams, a foreman employed by the Roxbury Painting and Decorating Company, testified that about April 11 Miss Nute came to the premises and went through the building; that "she asked the carpenter what he was going to do with the bathroom floor" and he "told her he was waiting for the electricians to finish wiring and he would put the floor down." Much of this evidence was denied by Miss Nute. She testified that before the agreement of March 25 was signed she gave the key to Hathaway to look over the premises, but was unable to get it back from him; that he represented to her that he was a contractor and had employees who were idle and asked if they could clean up the house; that she never consented to his making any repairs on the house and first discovered that the men were not Hathaway's employees when Fanning called on her. She further testified that there was no extension of the agreement and no consent that Hathaway should mortgage the premises; that she was not informed and had no knowledge that he could not carry out the agreement.

The counsel for the owners "duly objected to the admissibility of so much of the foregoing testimony as related to the placing of a mortgage upon the premises by a bank, or to the making of repairs or alterations upon the premises and to communications by the witness with Miss Nute in regard to the same, and the trial judge excluded, subject to the plaintiffs' exceptions duly saved, so much thereof as related to matters occurring prior to the signing of the contract, but subject to the respondents' said objections and exceptions admitted the remainder of said evidence objected to."

The parties could modify the original contract by a subsequent

parol agreement. *Gilman & Son, Inc.* v. *Turner Tanning Machinery Co.* 232 Mass. 573. The evidence of what was said by Miss Nute after the written contract was made, tended to show that the original contract was so modified by agreement of Hathaway and Miss Nute; and if the jury believed this evidence they could have found that Hathaway was to make the repairs in order that he might secure a mortgage on the premises and pay the owners the entire purchase price in money, and that Miss Nute, by this arrangement, consented to Hathaway's making the contract for the labor performed and materials furnished, within the meaning of the mechanic's lien statute, R. L. c. 197. *Davis* v. *Humphrey,* 112 Mass. 309. *Carew* v. *Stubbs,* 155 Mass. 549. *Brown* v. *Haddock,* 199 Mass. 480.

If this evidence showing that the written contract was qualified by a subsequent parol agreement were believed, a lien might be established on the interests of Miss Nute in the property, although there was no evidence to show that Mrs. Young was in any way indebted to the petitioners. She was a sister of Miss Nute, and while the latter had control and management of the property and collected the rents, Mrs. Young resided in another city and knew nothing of the repairs or alterations and made no agreement with Hathaway except the written agreement of March 25; the statement of Miss Nute that she had talked with her sister after Fanning's visit and informed her as the work progressed, is not enough to show that Mrs. Young consented to a change in the written agreement; and on all the evidence she was not shown to have consented to any modification of the agreement, or to have authorized any one to make a separate and independent agreement for her.

While one tenant in common cannot encumber the estate of his cotenant, *Muskeget Island Club* v. *Prior,* 228 Mass. 95, the interest of Miss Nute could be conveyed or taken on execution, and a lien could be established on her interest in the property. We can see no valid objection to establishing a mechanic's lien on the interest of one tenant in common of real estate. See *Kirby* v. *Tead,* 13 Met. 149; *Webber Lumber & Supply Co.* v. *Erickson,* 216 Mass. 81; *Mellor* v. *Valentine,* 3 Col. 260; *Hillburn* v. *O'Barr,* 19 Ga. 591.

Nor do we think it fatal to the petitioners that they have proceeded against both owners and have described them as such, and

in their petition state that the labor and materials were supplied with their consent. There is nothing in the statute which prevents a creditor who petitions to establish a lien against two or more tenants in common of real estate, from securing his lien upon the interest of the tenant who makes the contract or who authorizes the improvement to be made. The share of that tenant may be held for the work thus authorized and a lien established against it. See, in this connection, *Taft* v. *Church,* 164 Mass. 504; *Washburn* v. *Burns,* 5 Vroom, 18.

It follows that in the case of Mrs. Harriet E. Young the petitioners' exceptions are overruled; in the case of Miss Marietta Nute they are sustained.

*So ordered.*