Paola Bordier *vs.* Alice H. Davis & another.

Joseph G. Mastracci *vs.* Same.

Suffolk. March 29, 1921. — September 17, 1921.

Present: Rugg, C. J., Braley, De Courcy, Crosby, Pierce, Carroll, & Jenney, JJ.

*Mechanic's Lien.*

At the hearing of petitions under R. L. c. 197, against two respondents to establish mechanics' liens, it was agreed that the first respondent, a woman, at the time of the filing of certificates of liens was the record owner of the land described in the petitions; that in June, 1915, she made an oral agreement of sale of a large tract of land, which included that described in the petitions, to the second respondent: that on June 25 and July 1, the second respondent made contracts with the petitioners for the performing and furnishing of labor for buildings upon the land described in the petition, he agreeing to furnish the materials; that both petitioners accordingly furnished and performed labor, the first respondent knowing that the construction was going on, urging the petitioners to hurry it,

stating to them that the houses were hers and that she would pay them and that if they required any materials, they should get them from her husband. The petitioners stopped work because the husband refused to supply any more materials. *Held,* that a finding was warranted that the first respondent assented to the erection of the buildings.

A mason agreed in writing with a prospective purchaser of land to perform and furnish labor and do all mason work above the foundation in a building to be erected on the land for $7.25 per thousand brick, materials to be furnished by the prospective purchaser. His work was done with the consent of the owner of the land. He worked for three days after placing seventy-two thousand bricks, when he was forced to cease work because no further materials were furnished. He employed eight men and worked himself, paying bricklayers $5.20 per day, helpers $3 per day and valuing his own services at $7 per day. In a statement of account filed to perfect a mechanic's lien under R. L. c. 197, § 6, he certified as follows: "Labor performed and furnished under contract, total contract price, $545; credit by cash $125," leaving a stated balance as his claim of $420. At the trial of a petition under R. L. c. 197, to enforce the lien, there was no intimation that the petitioner wilfully and knowingly claimed more than was due him, and the judge found that the amount claimed by him was due to him. *Held,* that, under §§ 7, 16, of the statute, there was no inaccuracy in the statement such as to justify the dissolution of the lien.

A carpenter agreed in writing with the prospective purchaser of certain land to furnish all the labor for the carpentry work for ten houses, for which he was to receive $690 per house, $55 when the work on the second floor of any house was completed, $55 when the work on the roof was completed, $150 when the house was ready for lathing, $150 when the standing finish was completed, and the remaining $290 in two further payments. He worked for twenty-seven days and in that time completed one house up to the standing finish and put up the frame work on a second house. To put on the standing finish of the first house would have required the work of his entire crew of five men and himself for four days. He paid each of his men $4.80 per day and valued his own services at $10 per day. He was forced to cease work because materials, which were to be furnished by the owner's husband, were not furnished. He filed a statement of account for a mechanic's lien under R. L. c. 197, § 6, stating as follows: "Labor performed and furnished under contract, total contract price, $690; credit by cash $55," leaving the stated balance which he claimed was due to him of $635. At the trial of a petition under R. L. c. 197, to enforce the lien, there was no evidence that he knowingly and wilfully claimed more than was his due and the judge found that he did not intend to mislead in stating his account and that it was not sufficiently misleading to affect the lien. The judge found that there was due the petitioner $594, that he did two days' work on the second house (part of which was not on the premises described in the petition), that it was "impossible . . . to apportion the work as done between the two lots upon which the [second] building was being erected," and established the lien for $581.03. *Held,* that, under §§ 7, 16, of the statute, no inaccuracy appeared in the statement of account sufficient to prevent the maintenance of the lien.

Exceptions to findings and rulings by a judge, who, without a jury, heard a petition to establish a mechanic's lien under R. L. c. 197, upon an agreed statement of facts without other evidence, must be overruled if the findings and rulings were supported by the facts recited in the agreed statement.

A woman, who for several years had owned a large tract of land in a city, on May 18, 1915, received a conveyance of a smaller adjoining tract and during the next month made an oral agreement to sell the entire combined tract to one who by a plan divided it into ten lots. Two of these lots were designated on the plan as I and J. Lot J and about half of lot I were included in the tract conveyed by the deed of May 18. On June 25, when the cellar was dug for a house on lot J and stakes were set for a house on lot I, the prospective purchaser made a contract in writing with a mason for labor to be performed and furnished on "a building," and on July 1, when excavations had begun on lot I, made a contract in writing with a carpenter for labor to be performed and furnished on ten buildings. The contractors viewed the premises before making the contracts. Neither of them ever had seen the plan made by the prospective purchaser and nothing had been done to show on the face of the earth where the division line lay between lots I and J. The mason worked only on lot J. The carpenter worked on buildings on both lots. Half of the building on lot I was on the tract described in the deed of May 18. All work was done with the consent of the owner. The work having been caused to be stopped by the owner and prospective purchaser, the contractors under R. L. c. 197, filed statements and petitions to enforce mechanics' liens upon the land described in the deed of May 18. The judge who heard the petitions found that the lot described in the deed of May 18 and in the petitions was the lot on which the work was done, and further found that the carpenter "did work on both houses to the value of $594, and that he did two days' work with some men on the house on lot I. It is impossible, however, to apportion the work as done between the two lots upon which the building was being erected." The carpenter's lien was established at $581.03. *Held,* that

(1) The finding of the judge, above quoted, meant that an apportionment of the carpenter's work was impossible between the lot described in the deed of May 18 and that part of lot I on the plan which fell outside the lot described in the deed of May 18;

(2) The petitioners were not required to describe lot J as the lot on which they claimed liens;

(3) In the circumstances, the petitioners had a right to accept the record of the deed of May 18 as constituting one lot and were not obliged to search the records to discover whether the adjoining premises belonged to the same owner and describe the entire premises as one lot;

(4) The fact that the carpenter's contract with the prospective purchaser was for the building of ten houses was not determinative in the circumstances;

(5) There was no error of law in finding that the work done by the petitioners was upon the lot described in the deed of May 18 and in the petitions.

Two PETITIONS to enforce mechanics' liens, filed in the Police Court of Chelsea on October 20, 1915, against "Alice H. Davis, James J. Hunnewell, respondents, James J. Hunnewell, debtor."

On appeal to the Superior Court, the petitions were heard together by *Morton,* J., without a jury, upon an agreed statement of facts.

The land described in the petitions included all of lot J and nearly half of lot I referred to in the opinion, and half of the building being erected on lot I.

The contract of the petitioner Bordier with the respondent Hunnewell was in writing, and provided in substance that Bordier should perform and furnish all labor and do all mason work above the foundation in " a building on Library St., Chelsea " and should be paid $7.25 per thousand bricks. The petitioner Mastracci's contract required him to furnish all the labor for the carpenter work for ten houses, five on Library Street and five on Marlboro Street in Chelsea, for which he was to receive $690 on each house, as follows: when the work on the second floor of any particular house was completed $55; the further sum of $55 when the work on the roof was completed; the further sum of $150 when the house was ready for lathing; the further sum of $150 when the standing finish was completed; the further sum of $150 when the work on the doors and stairways was completed; and the further sum of $140 when all work required of Mastracci was completed. Bordier up to July 24 had laid seventy-two thousand bricks and had them inspected on that day. He continued to lay bricks up to July 27 when he was forced to quit work because Davis, the husband of the respondent, Alice H. Davis, refused to give him materials in accordance with the terms of his contract. He worked only on the one building. He employed eight men and himself, paying $5.20 per day each to the bricklayers, and $3 per day each to the tenderers. He valued his own time at $7 per day.

Mastracci had five men and himself working from July 1 to July 27, when he was compelled to cease work because Davis failed to furnish further materials. He paid his men $4.80 a day and valued his own time at $10 per day. The work on the first house was completed up to the standing finish. To put on the standing finish would require the work of the entire crew and himself for four days. The frame work on the second house was being put up when Mastracci was forced to stop.

Certificates of liens were filed by the petitioners in the registry of deeds of the county of Suffolk on August 24, 1915. The account therein stated by Bordier was for " Labor performed and furnished under contract, total contract price, $545; credit by cash, $125 " leaving a balance of $420. The account stated by Mastracci was " Labor performed and furnished under contract, total contract price, $690; credit by cash, $55;" leaving a balance of $635. The petitions contained the same statements of accounts.

Other material facts are described in the opinion.

In each case, the respondent Davis asked for the following rulings:

"1. There is no evidence to warrant the court in finding that the petitioner made the contract as alleged in the petition with the consent of the respondent Davis.

"2. The fact that the respondent Alice H. Davis agreed to sell the land to the respondent Hunnewell, and allowed the respondent Hunnewell to erect buildings thereon before taking title, does not warrant the court in finding that the contract as alleged in the petition was made with the consent of the respondent Davis.

"3. Knowledge on the part of the respondent Davis that work is being done on the premises described in the petition does not constitute consent within the meaning of the mechanic's lien law.

"4. There is no evidence to warrant the court in finding that the petitioner within thirty days after ceasing to labor, or to furnish labor, filed in the registry of deeds in Suffolk County, a just and true account of the amount due him, with all just credits given, together with a description of the property intended to be covered by petitioner's lien sufficiently accurate for identification.

"5. That the description of the property in the petition does not conform with the lot of land upon which the building stands.

"6. The petitioner having knowledge of the manner in which the respondent Hunnewell staked out the proposed lots upon which the buildings were to be erected, was obliged to file a description in the registry of deeds substantially covering the lots as laid out by the respondent Hunnewell, and the description as filed by the petitioner is not substantially accurate.

"7. That the account filed in the registry of deeds was not a just and true account of the amount due the petitioner.

"8. That the petitioner did not furnish all the labor as furnished in his account.

"9. That the petitioner did not furnish labor upon all the structures bounded within the limits of the land described in the petition.

"10. That the burden is upon the petitioner to show that the account as filed was not intended to mislead.

"11. That the account as filed by the petitioner was misleading.

" 12. That upon all the evidence the petitioner is not entitled to maintain his lien against the respondent Davis."

The judge made the following findings and rulings:

" I find the following facts: The certificates of lien were filed by each petitioner within the required statutory time. Each certificate contained a description of the property sufficiently accurate for identification. The land described in the certificates was conveyed to Mrs. Davis in one deed; and the descriptions therein corresponded to the description in said deed. There were no fences or visible boundaries separating the property into lots.

" There was no evidence that either plaintiff knew, when the contract was made, of the division of the land into lots by plan. The fact that the lots were designated as separate lots or that the buildings were separate and upon different lots according to the plan is immaterial.

" The knowledge of the petitioner of the staking out of the four corners of the adjoining house and of the digging of the cellars is no more material.

" I find and rule that the descriptions in the petitions conform with the lot of land upon which the buildings stand, and are substantially accurate, and that the property is subject to the lien provided that Mrs. Davis consented to the erection of the buildings. I find that she did so consent.

" I find that both petitioners worked under their contracts until and including July 27 and then stopped work because of failure on Hunnewell's part to carry out the contract, and that there is due to Bordier for said work the amount claimed in the petition.

" I find that Mastracci did work on both houses to the value of $594, and that he did two days' work with some men on the house on lot I. It is impossible, however, to apportion the work as done between the two lots upon which the building was being erected.

" I find that Mastracci, in stating the account in the petition, did not intend to mislead, and that it was not sufficiently misleading to affect his lien.

" I find and rule that both petitioners are entitled to maintain their liens, — Bordier to the extent of $521.20; Mastracci to the extent of $581.03, both including interest to June 26, 1920; and

that a sufficient amount of the property to which the lien attaches should be sold in satisfaction thereof."

The respondent Davis alleged exceptions.

The case was argued at the bar in March, 1921, before *Rugg,* C. J., *De Courcy, Pierce, Crosby, & Jenney,* JJ., and afterwards was submitted on briefs to all the Justices.

*H. Bergson,* for the respondent Davis.

*L. Saltonstall,* for the petitioners.

CARROLL, J. These two petitions to enforce mechanics' liens, R. L. c. 197, were tried together. The respondent Alice H. Davis owned a tract of land in Chelsea, a part of which, on Liberty Street was acquired on May 18, 1915, the description of the part so acquired corresponding with the description in each petition. The remainder of the large tract had been owned by her for several years.

In June, 1915, she made an oral agreement of sale of the entire tract to the respondent Hunnewell, who divided it into ten lots and made a plan which was in evidence at the trial. In September, 1915, the respondent Davis at the request of Hunnewell conveyed these lots to one Barker, who mortgaged the entire property to one Soden " to secure the purchase money for said land and the advances to cover the cost of the construction of the buildings."

On June 25, 1915, Hunnewell made a contract with the petitioner Bordier, to perform and furnish all the labor necessary in the brick mason work of a building to be constructed on lot " J " at $7.25 per thousand, Hunnewell to supply all material. On July 27, because no materials were supplied Bordier, he ceased to labor. A contract with the petitioner Mastracci and Hunnewell was executed July 1, 1915, wherein Mastracci agreed to furnish all the labor necessary for the carpenter work in the erection of ten houses at $690 for each house, Hunnewell to supply the material. Mastracci did the work on the building on lot "J " and started the frame work on lot " I ", and on July 27 he stopped work because no materials were supplied him.

The respondent Davis was the owner of the premises, and if Hunnewell was rightfully acting for her in procuring the labor for the erection of the house, the work was done with the consent of one having authority from the owner. R. L. c. 197, § 1. *Roxbury Painting & Decorating Co.* v. *Nute,* 233 Mass. 112, and cases cited.

It was agreed that she knew the work was in progress, urged the petitioners to hurry it on and told them that the houses were hers and that she would pay them; that if they required any materials, to get them from her husband; and that the petitioners stopped work because Davis "refused to supply . . . any more material, in accordance with the terms of . . . [the] contract." From these facts the finding that Mrs. Davis assented to the erection of the building was fully warranted. R. L. c. 197, § 1. *Roxbury Painting & Decorating Co.* v. *Nute, supra. Davis* v. *Humphrey,* 112 Mass. 309. *Carew* v. *Stubbs,* 155 Mass. 549. *Brown* v. *Haddock,* 199 Mass. 480.

The respondents contend that the statements filed in the registry of deeds by the petitioners were not just and true accounts of the amounts due. R. L. c. 197, § 6, directs that the lien shall be dissolved unless the person claiming it, within thirty days after he ceases to labor, filed in the registry of deeds a just and true account of all amounts due him, together with all just credits. Under § 7, the validity of a lien shall not be affected by any inaccuracy in the statement, unless it is shown that the person filing the statement has wilfully and knowingly claimed more than is due him; and by § 16, if the owner has failed to perform his part of the contract, the other party, if without default, shall be entitled to a reasonable compensation for the work done in proportion to the price stipulated for the whole. In addition to the seventy-two thousand bricks laid by Bordier to July 24, he performed and furnished labor to July 27, when without his default the contract was broken by the respondents. In his statement he claimed a balance of $420 due him, the contract for the brick work amounting to $545 and a credit for $125 paid him by Hunnewell. Bordier was entitled to a reasonable compensation for the labor performed and furnished. R. L. c. 197, § 16. *McCue* v. *Whitwell,* 156 Mass. 205. *Orr* v. *Fuller,* 172 Mass. 597. We discover no inaccuracy in his statement such as to justify the dissolution of the lien, and there is no intimation that he wilfully and knowingly claimed more than was due him.

Mastracci furnished the labor in the erection of the house on lot "J", as far as putting on the standing finish, and had started the frame work on the other building when he was forced to stop work on both buildings because Davis refused to supply him with

materials.   In his statement he gave credit for the money paid him and states that the contract price was $690, leaving a balance of $635.   The judge found that the value of the work done on both houses was $594, and found that Mastracci was entitled to $581.03. We are unable to discover any inaccuracy in Mastracci's statement. sufficient to prevent the maintenance of his lien.   He was to build ten houses at $690 for each house, and in setting out the contract price at $690 he did not fail to make a substantially true and just account of the amount due him.   There is no evidence that he knowingly and wilfully claimed more than was due and it was found that he did not intend to mislead in stating his account and it was not sufficiently misleading to affect his lien.   R. L. c. 197, § 7.

The respondents also contend that the land was not sufficiently described, that if the petitioners are entitled to establish their liens, it must be either on lot "J" as shown on the plan, or on the entire tract, including the land conveyed to the respondent Davis by deed of May 18, 1915, and described in the petitions, and in addition the remainder of the lot which she owned at this time. The petition in describing the land, followed the description in the deed of May 18, 1915.   This deed described one lot of land, and it was upon this entire lot as described and upon no other that the lien was sought to be established.

Before June 25, when Bordier's contract was made, the cellar for the house on lot "J" had been dug and the stakes set for the house to be erected on lot "I"; and before July 1, when Mastracci's contract was executed, excavations for the cellar on lot "I" were begun.   Before entering into any contract with the respondent Hunnewell, the petitioners viewed the premises where the work was to be done and saw the cellars as dug and laid out on lots "J" and "I" but the petitioners never had a plan of the premises and nothing had been done to show, on the face of the earth, where the division line ran between lots "J" and "I."

The case was heard on an "agreed statement of facts."   There was no evidence other than these facts, and if the judge's findings and rulings are supported by these facts the exceptions must be overruled.   *Frati* v. *Jannini*, 226 Mass. 430.   The judge found that the lot described in the deed to Davis of May 18, 1915, and described in the petitions was the lot on which the work was done;

and further found " that Mastracci did work on both houses to the value of $594, and that he did two days' work with some men on the house on lot I. It is impossible, however, to apportion the work as done between the two lots upon which the building was being erected." We construe this to mean that the apportionment is impossible between the lot described in the deed to Davis of May 18, 1915, and that part of lot " I " on the plan which falls outside the lot described in the deed of May 18, 1915. There was no fence nor mark nor stake on the surface of the land to show the boundaries of lot "J ", and by merely building several houses, the land on which they were built was not thereby divided into several tracts. There was no plan in the possession of the petitioners showing any division of the land into separate lots, and they were not required to describe lot "J " in their petition as the lot on which they claimed their lien.

Mrs. Davis bought the lot described in the petitions on May 18, 1915, by a single conveyance, but a few weeks before the lienors made their contracts. The rest of the large tract she had owned for several years. There was nothing on the face of the earth indicating a physical unification of the two tracts into one estate, and there is nothing to show that the owner intended to deal with the two lots as one. Mere identity of title is not enough. She treated it as a separate lot by her purchase. The lienors had a right to accept the record of the deed of May 18, 1915, as constituting one lot. They were not obliged to search the records to discover whether the adjoining premises belonged to the same owner, and describe the entire premises as one lot, when the landowner may never have intended a unification of title but proposed to keep and treat the new purchase as a separate estate. In describing the lot as constituting a single tract as shown by the deed, the petitions followed the division made by the owner by the purchase, and the landowner cannot be heard to complain in default of having expressly or impliedly informed the lienor that he had incorporated the recent purchase into the larger estate owned for many years before. The lienors did not by their petition attempt to divide the land at their option. They simply accepted as true the declaration of the owner disclosed by the record. We find nothing in *Quimby* v. *Durgin,* 148 Mass. 104, *Collins* v. *Patch,* 156 Mass. 317, *Whalen* v. *Collins,* 164 Mass. 146, *Donnelly* v.

*Butler,* 216 Mass. 41, 43, *Orr* v. *Fuller,* 172 Mass. 597, at variance with what is here stated, and the result is not affected by the fact that Mastracci's agreement was to build ten houses. There was no deed on record that Hunnewell had purchased the entire tract and so far as Mastracci knew, Hunnewell might be purchasing the rest of the land from some person other than Mrs. Davis, and when the work of the lienor was stopped and he could proceed no further he had a right to place his lien on the land on which he worked in whole or in part as he found it described on the records. He was not required to make a further search than the record of this lot on which he worked, unless there was something on the face of the earth which indicated, by the owner's acts, an intention to change the situation created by the deeds on record.

There was no error of law, therefore, in finding that the work done by the petitioners was upon the lot described in the deed of May 18, 1915, and described in the petitions.

The judge found that there was due Bordier, the amount claimed in his petition and that he was entitled to maintain his lien to the extent of $521.20. He found that Mastracci did work on both houses to the value of $594, and established his lien to the extent of $581.03, including interest on both petitions to June 26, 1920. Interest runs from the date of the filing of the petition, *Casey* v. *Weaver,* 141 Mass. 280, and if there was any error in computing the amounts due the petitioners, the respondents were not harmed by it.

*Exceptions overruled.*