J. A. GREENLEAF & SONS COMPANY et als.

*vs.*

FREE-ANDREWS SHOE COMPANY et als.

Androscoggin.     Opinion December 31, 1923.

*A bill in equity to enforce a lien claim against the property of the owner in invitum
for work and materials furnished under a contract to which the owner was not a
party and over which he had no control should not go beyond the natural
import of the evidence offered to prove consent.   The consent of
the owner must be shown, and whether it appears in any
given case will depend wholly upon the
facts in that case.*

If the well-settled principles of law are applied directly to the undisputed facts
in this case, there is no adequate evidence that brings to the knowledge of the
owner any explicit information as to the nature and extent of the alterations
and repairs which were being made in his building.

On report.   A consolidated bill in equity to enforce lien claims
which plaintiffs allege they have on land and building owned by
George C. Wing, one of the defendants, for labor and materials
furnished in altering and repairing the building during the occupancy
of the defendant, Free-Andrews Shoe Company, under a lease from
said owner, the contracts for such labor and materials having been
made with said Free-Andrews Shoe Company.   The question
involved was as to whether the owner had consented to such labor
and materials.   A hearing was had upon the bills, answers, general
replications, report of a Special Master and the evidence taken before
him and by him reported to court.   At the conclusion of the testi-
mony, by agreement of the parties, the case was reported to the
Law Court for final determination.   Judgment for liens upon the
property denied.   Judgments for plaintiffs against Free-Andrews
Shoe Company.

The case is fully stated in the opinion.

*Harry Manser*, for plaintiffs.

*White, Carter & Skelton and L. J. Brann*, for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

MORRILL, J., concurring in the result by opinion.

SPEAR, J.   This consolidated cause (R. S., Chap. 96, Sec. 35), aims to establish mechanics' liens upon land and buildings formerly occupied by Free-Andrews Shoe Company under lease from George C. Wing, the owner thereof, who is made a defendant, and has answered.

At the hearing before a single Justice upon the coming in of the Master's report, trial by jury having been waived, the cause was reported to the Law Court for final determination.

There is little, if any, dispute as to the material facts.   On December 15, 1919, George C. Wing, the owner, leased to Free-Andrews Shoe Company for a term of five years from that date, at a rental of fifty-five dollars a month,

"A certain three story wooden building, with basement, standing on the easterly side of Mechanics Row, in said Auburn, the first story of which has for many years been occupied by John M. Crawshaw as a machine shop; and the right to have a conveyance by deed of warranty at any time during the term of this lease, of said building and the land between said building and a line five feet distant from the stable known as the Hotel Cortland Stable, and extending back parallel thereto to the line now occupied by a temporary fence, upon the payment of eighty-five hundred dollars in money; but the lease of the building does not carry with it a lease of the land, except so much thereof as is necessary for the purposes of ingress and egress to the building first described.   Said lessee is to pay all water rates and sprinkling taxes, if any during the term of this lease, and to make all repairs inside and out."

The lease contained no other covenant as to repairs than as above stated, nor any statement of the purposes for which Free-Andrews Shoe Company intended to use the building; but undoubtedly the lessor knew when the lease was executed that the lessee was hiring the building for use as a shoe factory, and intended to manufacture shoes therein.

The building had previously been used, at least in part, as machinist's shop for many years.   Upon the execution of the lease the

lessee took possession and employed J. A. Greenleaf & Sons Company to make alterations and repairs necessary to adapt the building for the manufacture of shoes; the work was done and materials furnished between January 7, 1920, and March 17, 1920. The business career of Free-Andrews Shoe Company was short; the lease was terminated for breach of the conditions thereof, and lessor took possession April 13, 1920; the lessee was adjudicated a bankrupt April 24, 1920. While the lease was in force, the lessee was in possession of the building, and the lessor exercised no control over it. While the alterations and repairs were in progress, Mr. William A. Greenleaf called the attention of the owner's son to the work; the conversation as given in the son's testimony, which is not controverted, is as follows:

"I met Mr. Greenleaf in front of the building in which our office is. He said to me he was engaged in . . . . I am not quoting exactly, but the substance of it . . . . that he was engaged in renovating your Free-Andrews Shoe Company building, and he made an inquiry of me as to what interest or direction we had in it. I told him we had none. He changed I think a window if I remember correctly. I said to him that the repairs were on the Free-Andrews Shoe Company. Mr. Greenleaf says to me, 'I understand the repairs are on the lessee.' He said he didn't want to make what he called a structural change without my father's knowing about it, and I spoke to my father and reported either to Mr. Greenleaf or Mr. Free—I think to Mr. Free, and he sent word to Mr. Greenleaf that, as long as there was no weakening of the building there was no objection, and I never went near the building, never was in it until after the bankruptcy."

The attitude of Mr. Wing, the owner, is best expressed in his own language, as follows:

"You will notice that this lease provides that the lessee was to do all repairs, inside and out, and it didn't concern us what the repairs were if they did not impair the efficiency of the building. I never went near it.

"Q. But what I want to get at is whether you knew that they were making changes and repairs and alterations in the building for other purposes?

"A. I only had a suggestion of it once, and I will tell you about that. My son came in one day, and said, 'Mr. Greenleaf,' 'Put,' he called him, said he was making some changes out there; I won't

say whether they were putting in a door where there had been a window, or putting in a window where there had been a door; something of that sort, and Put says he didn't know but you ought to know about it.' I says, 'I don't care anything about it if they don't weaken the building.' I says, 'Greenleaf knows better than that.' I never went near it.

."Q. That is, you mean that Greenleaf knew better than to do anything to weaken it?

"A. Yes; that I thought Greenleaf knew too much to weaken the building; that is all I cared about it; might do what they were a mind to.

"Q. That is, while Greenleaf & Sons were at work there you did know that something was being done?

"A. Yes, I did have that suggestion. I was busy and paid no attention to it."

The paint furnished by Charles M. Hay Paint Company was purchased by Mr. Free and used upon the building, in greater part upon the interior, by J. A. Greenleaf & Sons Company. Mr. Wing had no knowledge of this paint bill; the representative of the Paint Company made no inquiries as to the ownership of the building and was content to deal with the Free-Andrews Shoe Company alone.

The foregoing are the material facts presented in a light as favorable to the lien claimants as the case will permit.

This is a bill to enforce a lien claim against the property of the owner in invitum, for work and materials furnished under a contract to which the owner was not a party and over which he had no control. The only question, therefore, is whether the consent of the owner should be inferred from the foregoing facts including his declaration touching his knowledge of what was being done. R. S., Chap. 96, Sec. 29, provides that whoever performs labor or furnishes labor or materials in erecting, altering, moving or repairing a house, building, or appurtenances . . . . by virtue of a contract with, or by consent of, the owner, has a lien thereon." Consent is defined in *Hanson* v. *News Publishing Company,* 97 Maine, 95, as follows: "Consent, within the meaning of the statute, is held to mean something more than acquiescence. It implies an agreement to that which could not exist without such consent."

In cases of this kind we are of the opinion that a fair inference against the owner should not go beyond the natural import of the

evidence offered to prove his consent. With regard to what may constitute consent a clear distinction is made in *Shaw* v. *Young*, 87 Maine, 271, and confirmed in *York* v. *Mathis*, 103 Maine, 67, between ordinary repairs which are necessary, and alterations and improvements, which are made for the particular purpose of the tenant. *Shaw v. Young*, having found in that particular case that consent should be inferred from the facts, then sums up on this point as follows:

· "We are satisfied from the· facts in this case that the statute consent of the owners specially appears.

"This decision, however, should not be extended beyond the facts in this particular case. Consent may be inferred for ordinary preservative repairs, when it would not be inferred for alterations, remodelings, additions, or even more extensive repairs. The consent must be shown, and whether it appears in any given case will depend wholly upon the facts in that case."

The work and materials in the present case come within the latter classification. They went into work and alterations of which the owner had no detailed knowledge and had no interest, except their effect upon the strength of the building. In *Hanson* v. *News Publishing Company*, 97 Maine, 103, it is held: "The fact that Mr. Brown knew the lessees were putting in the partitions which were of no service to him or to the store, and to which he had no right to object consistently with the rights of the lessees, does not authorize the inference that he consented in the sense of the statute."

If we apply the foregoing well-settled principles of law found in *Shaw* v. *Young*, supplemented by the rule found in *Hanson* v. *News Publishing Company*, directly to the undisputed facts in the present case, there is no adequate evidence sufficient to affect the question of consent, tending to prove that the owner of the building had any knowledge as to the nature of the alterations and repairs, except what was contained in the lease, the information conveyed to him by · his son, and his own declaration. And there is nothing to be found in these classes of evidence that brings to the knowledge of the owner any explicit information as to the nature and extent of the alterations and repairs which were being made in his building.

On the other hand, under the rule of exclusio, which may not be inapt under the circumstances of this case, it would seem that the testimony of the owner might be fairly construed as a legitimate .

inference that he had no knowledge of the nature and extent of the repairs beyond the ordinary repairs. Therefore, unless we hold that, under the language of the statute, general knowledge not of what, but merely that, "alterations and repairs" are being made, it would seem that under the rule of distinction between extraordinary and ordinary repairs, as stated in *Shaw* v. *Young,* the owner's knowledge upon the evidence here presented cannot fairly be construed as proving consent.

Judgment for liens upon the property must be denied; the owner may recover a single bill of costs against J. A. Greenleaf & Sons Company and Charles M. Hay Paint Company. The plaintiffs may have judgments against Free-Andrews Shoe Company as follows: Auburn Electrical Company $586.94, W. A. Ray, Jr. $109.58, J. A. Greenleaf & Sons Company $1,913.57, and Charles M. Hay Paint Company $270.75, each with interest from date of filing their respective bills and costs.

*Decree in accordance with opinion.*

MORRILL, J. I fully concur in the result of the foregoing opinion, but not in the line of reasoning by which that result is reached.

One undisputed fact seems to me to be decisive of the case. By the terms of the lease, the lessor agreed to convey to the lessee, by warranty deed, at any time during the term, the building leased and a specifically described lot of land on which it stands, for the sum of eighty-five hundred dollars. The labor and materials in question were furnished while this contract was in force and unmodified. While the contract to convey the property so remained in force and unmodified, the owner did not agree that the prospective purchaser could charge him or the property with responsibility for the purchaser's contracts. The contract did not contemplate that the owner would derive any ultimate benefit from the work to be done. Knowledge that the property was to be used as a shoe factory and that repairs and alterations would be necessary to fit it for such use, and were being made, is not enough to establish a lien on the owner's estate. *Roxbury Painting and Dec. Co.* v. *Nute,* 233 Mass., 112. *Hayes* v. *Fessenden,* 106 Mass., 228; and cases from states having lien statutes similar to the statute of Maine collected in 4 A. L. R., 685. This case is clearly distinguishable from *Baker* v. *Waldron,*

92 Maine, 17, in which the seller made it a condition of the sale that the purchaser should erect the mill.

The owner neither contracted with the lien claimants, nor expressly consented that they should furnish the labor and materials, nor expressly authorized the vendee to charge the building with any expense; on the contrary the lease provided; "Said lessee is . . . to make all repairs inside and out."

Nor can it be said that the owner's consent should be inferred, or that by implication he authorized the work upon the building. There was nothing in his conduct to justify the expectation and belief that he had consented to the making of the repairs and alterations on the credit, or at the charge of the building, as in *York* v. *Mathis*, 103 Maine, 73, 77; the lien claimants were not misled; they made their contracts upon the credit of the lessee, without considering the building. "No one ever looked for anything like this," testified Mr. Greenleaf.

It is contrary to the ordinary course of business affairs and dealings that the owner, who had agreed to convey the property by warranty deed for a specified price, would consent, either expressly or tacitly, to the making of alterations and repairs by the prospective purchaser for which liens would attach to the owner's interest, unless the cost had been included in the price, which is not the case here.

Consent should not be implied contrary to the obvious truth unless upon equitable principles the owner should be estopped from asserting the truth; that is, the actual fact. *York* v. *Mathis*, supra, at Pages 76 and 77. *De Klyn* v. *Gould*, 165 N. Y., 282; 80 Am. St. Rep., 719. *Hartley* v. *Holt*, 58 Conn., 445, 450. *Clark* v. *North*, 131 Wis., 599, 605; 11 L. R. A., (N. S.), 746; 111 N. W., 681. There is no ground for invoking the principle of estoppel here.

Consent by the owner cannot be found on the facts of this case. See *Conant* v. *Brackett*, 112 Mass., 18, a very similar case.